UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERRY CASTORIA, <br><br> Plaintiff, <br><br> v. <br><br> BERLIN INTERNATIONAL COLORADO, L.L.C., et al., <br><br> Defendants. | Civil Action No.: 2:16-cv-01704 <br><br> OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendants Berlin International LLC ("Berlin") (incorrectly named in the case caption as "Berlin International Colorado, L.L.C."), Trophy Hunter Colorado, LLC ("Trophy") (incorrectly named in the case caption as "Trophy Hunter, L.L.C. M.G.R.-Trophy Hunter Investments, Ltd"[1]), Sterling Stoudenmire ("Stoudenmire"), Joseph Sozio ("J. Sozio"), Scott Sozio ("S. Sozio"), and Steven Van Dyke ("Van Dyke," and collectively with Berlin, Trophy, Stoudenmire, J. Sozio, and S. Sozio, "Defendants") to dismiss the complaint of *pro se* Plaintiff Jerry Castoria ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a). (ECF No. 2). Plaintiff opposes the motion. (ECF No. 8). Pursuant to Federal Rule of Civil Procedure 78(b), no oral argument was heard. For the reasons set forth below,[2] Defendants' motion is granted in part and denied in part.

---

[1] Although Plaintiff's complaint refers to Trophy Hunter, L.L.C. and M.G.R.-Trophy Hunter Investments, Ltd as two separate entities, Plaintiff clarifies in his opposition to Defendants' motion to dismiss that Trophy was incorrectly named, (ECF No. 8 at 1), and therefore, the Court need only address Plaintiff's claims as against Trophy.

[2] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991).

## II. BACKGROUND

The following facts are accepted as true for purposes of the instant motion. Plaintiff is a resident of Bergen County, New Jersey. (ECF No. 1-1 at 8). Berlin is a limited liability corporation incorporated in Colorado with a principal place of business in Colorado. (*Id.* at 8-9). Trophy is a limited liability corporation incorporated in Florida with a principal place of business in Florida. (*Id.* at 9). Stoudenmire is a resident of Colorado, J. Sozio and S. Sozio are residents of Florida, and Van Dyke is a resident of Massachusetts. (ECF No. 1 at 10). Stoudenmire is the chief executive officer ("CEO") of Berlin, which "is engaged in the business of growing, harvesting, distributing and selling marijuana in the State of Colorado." (ECF No. 1-1 at 9). Trophy "is the primary investor in [Berlin] and exerts significant control over its management and operation." (*Id.*). J. Sozio is the former CEO of Berlin, (*id.* at 10), and the Chairman of the Board of Managers for Berlin. (ECF No. 8 Exhibit F). Stoudenmire, S. Sozio, and Van Dyke are all Directors of the Board of Managers for Berlin.[3] (*Id.*).

Plaintiff alleges that he:

> [W]as employed by Berlin as the Defendants' Chief Financial Officer [("CFO")][4] and was hired to operate from the companies [sic] remote office in New Jersey and was charged with the responsibility of handling executive level financial matters, regulatory issues and to explore business relationships for Medical Marijuana and Commerce in . . . New Jersey and New York[. Plaintiff further

---

[3] Although Plaintiff states that "[a]t the time of termination of the Plaintiff, neither [S.] Sozio nor [J.] Sozio, held a position within Berlin," (ECF No. 8 at 4), Defendants appear to admit, and the documented evidence indicates that J. Sozio, Stoudenmire, S. Sozio, and Van Dyke are indeed members of Berlin's Board of Managers. (ECF No. 4 at 12 ("The Individual Defendants' sole connection to New Jersey is through their employment roles with a company that happened to engage [a] single . . . worker in New Jersey."); ECF No. 8 Exhibit F).

[4] Defendants dispute that Plaintiff was an employee of Berlin, and maintain that Plaintiff was an independent contractor. (ECF No. 4 at 4). The Court, however, is obligated to "accept all of . . . [P]laintiff's allegations as true and construe disputed facts in favor of . . . [P]laintiff[.]" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 371 (3d Cir. 2002) (citations omitted). Moreover, a review of Berlin's Board of Managers minutes from November 3, 2014 indicates that "[Plaintiff] was nominated as the Chief Financial Officer. Such nomination was seconded and affirmed by unanimous vote of the board members." (ECF No. 8 Exhibit F).

2

alleges that Defendants] . . . avail[ed] themselves of the Plaintiff's 38 years of tristate healthcare experience and significant contacts in the healthcare industry.

(*Id.* at 2-3; *see also id.* at 8-9). As part of his compensation package, Plaintiff was guaranteed a two-year term of employment, an annual salary of $150,000, full healthcare benefits, and one to two percent stock interest in Trophy. (*Id.* at 3).

In May and June 2014, Plaintiff alleges that J. Sozio met with Plaintiff in New Jersey "to discuss details prior to hiring Plaintiff as Berlin's [C]hief Financial Officer." (*Id.* at 8; *see also id.* at 9 (explaining that J. Sozio "lived part time in [New Jersey] at Plaintiff's home" and that "[m]any discussions took place at Plaintiff's residence in New Jersey between [J. Sozio] and Plaintiff reviewing the details of employment at Berlin as" CFO)). As Berlin's CFO, Plaintiff purports that he:

> [U]sed his New Jersey contacts to set up meetings and conference calls with a partner from a large national healthcare consulting firm operating from New Jersey. The meetings and discussions included [J.] Sozio and Plaintiff. Plaintiff used his extensive contacts in New Jersey and complied with requests from Defendants' [sic]. The primary intent of the meetings was to discuss opening up networking opportunities for commerce and other business relationships in the forum state and greater tristate area in general. These business arrangements seemed feasible in light of the fact that New Jersey had approved consumption of medical marijuana back in 2010 and in 2014 introduced a bill in the New Jersey Senate for passage of recreational marijuana which legislation would be modeled after Colorado law.

(*Id.* at 7; *see also id.* at 9). Moreover, Plaintiff alleges that Defendants "relied on Plaintiff to perform essential functions from its remote office located in New Jersey" and "continued to engage in continuous business, phone, electronic funds transfer (EFT'S) and email interactions with Plaintiff." (*Id.* at 7).

"In late January 2015, [Plaintiff] met with Stoudenmire in New York City at the office of [Trophy] where [Plaintiff] was informed that Stoudenmire intended on purchasing a brand of marijuana clones from an unauthorized and/or unlicensed vendor." (ECF No. 1-1 at 12).

3

Believing that such a purchase "would be unlawful under [Marijuana Enforcement Division] rules and regulations," Plaintiff "advised Stoudenmire not to purchase marijuana clones from an unauthorized and/or unlicensed vendor[.]" (*Id.*). Plaintiff alleges that despite his advice, Stoudenmire did so anyway. (*See id.* at 12-13).

"[I]n March 2015, during a conference call with Stoudenmire, S. Sozio and Van Dyke . . . [Plaintiff] asked Stoudenmire what he intended to do about the clones," and "Stoudenmire misrepresented that he would have the illegally purchased clones destroyed." (*Id.* at 13). After learning that no such destruction took place, Plaintiff "informed J. Sozio of the unlawful actions" and "demanded the company immediately cease such illegal conduct." (*Id.*). Plaintiff alleges that "[l]ess than a week after the aforementioned conversation between [Plaintiff] and J. Sozio, [Plaintiff's] employment with [Berlin] was terminated by S. Sozio with July 31, 2015 being the effective date of termination." (*Id.*; *see also* ECF No. 8 at 8 ("[O]n June 8th 2015 [J.] Sozio made the phone call to the forum state to terminate Plaintiff.")).[5] On July 19, 2015, Plaintiff signed a Unit Purchase Agreement whereby Trophy repurchased Plaintiff's one to two percent stock interest in Trophy. (ECF No. 8 Exhibit A).

Plaintiff filed a complaint on February 9, 2016 with the Superior Court of New Jersey, Bergen County Law Division. (ECF No. 1-1). On March 28, 2016, Defendants removed this matter to federal court. (ECF No. 1). In the complaint, Plaintiff asserts two counts: one violation of New Jersey's Conscientious Employee Protection Act ("CEPA") and one "Common Law Public Policy Claim." (ECF No. 1-1). On April 4, 2016, Defendants filed a motion to dismiss. (ECF No. 2). Plaintiff and Defendants subsequently filed a number of submissions, after which the parties engaged in mediation, which was ultimately unsuccessful. The Court now

---

[5] Although ultimately inconsequential to this motion, it is unclear from Plaintiff's submissions whether J. Sozio or S. Sozio called Plaintiff to terminate his employment with Berlin.

4

considers Defendants' motion, and all submissions filed thereto.

## III. DISCUSSION

Defendants argue that Plaintiff's complaint should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, that this matter should be transferred to the Middle District of Florida.[6] As personal jurisdiction is a threshold matter, the Court will address Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) before addressing whether the case should be transferred.

### A. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(2)

Defendants argue that this Court lacks personal jurisdiction over them because this "case has nothing to do with New Jersey." (ECF No. 4 at 7). "Personal jurisdiction analysis looks to the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *Arpaio v. Dupre*, 527 F. App'x 108, 112 (3d Cir. 2013). "Because New Jersey's long-arm statute permits the exercise of personal jurisdiction to the full extent allowed under the Due Process Clause, 'the two jurisdictional inquiries in this case collapse into one: whether the exercise of jurisdiction comports with due process.'" *Zelma v. Burke*, No. 16-2559, 2017 WL 58581, at *2 (D.N.J. Jan. 4, 2017) (quoting *Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 435 (D.N.J. 2015)). "There are two types of personal jurisdiction that reflect the requirements of the Due Process Clause of the Fourteenth Amendment—general jurisdiction and specific jurisdiction." *Id.* (citing *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007)). "When evaluating a motion to

---

[6] The Court notes that in Defendants' opening brief, in a three-sentence footnote, Defendants appear to allege insufficient service of process. (ECF No. 4 at 6 n.6). However, "[n]o case law is cited. The footnote fails to cite either Rule 12(b)(4) (insufficient process) or Rule 12(b)(5) (insufficient service of process). Defendants' argument failed to put [P]laintiff on notice of [D]efendant[s'] . . . position." *Young v. Beard*, No. 07-2266, 2009 WL 3111742, at *4 (M.D. Pa. June 1, 2009), *report and recommendation adopted in part, rejected in part on other grounds*, No. 07-2266, 2009 WL 3111736 (M.D. Pa. Sept. 23, 2009). Accordingly, "Defendants' position is waived for failure to argue it in their opening brief." *Id.*

dismiss for lack of personal jurisdiction, the court may consider facts outside of the complaint." *Wurth Adams Nut & Bolt Co. v. Seastrom Mfg. Co. Inc.*, No. 14-3804, 2015 WL 1530969, at *1 (D.N.J. Apr. 6, 2015).

Plaintiff alleges that "Defendants' [sic] had minimum contact[s] with . . . [P]laintiff in [the] forum state that [were] both continuous and systematic." (ECF No. 8 at 1; *see also id.* at 8). "For a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are, therefore, the paradigm bases for general jurisdiction." *Malik v. Cabot Oil & Gas Corp.*, No. 16-2829, 2017 WL 4260816, at *2 (3d Cir. Sept. 26, 2017) (citations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Berlin is a limited liability corporation incorporated in and with a principal place of business in Colorado. (ECF No. 1-1 at 8-9). Trophy is a limited liability corporation incorporated in and with a principal place of business in Florida. (*Id.* at 9). Stoudenmire is a resident of Colorado, J. Sozio and S. Sozio are residents of Florida, and Van Dyke is a resident of Massachusetts. (ECF No. 1 at 10). Despite Plaintiff's conclusory assertions cited above, "nothing in the record supports a finding that [Defendants'] 'affiliations with the state are so "continuous and systematic" as to render [them] essentially at home' in this forum." *Jeffs v. World Monuments Fund, Inc.*, No. 17-198, 2017 WL 4864981, at *3 (E.D. Pa. Oct. 26, 2017) (citing *Goodyear*, 564 U.S. at 919). Therefore, this Court does not have general jurisdiction over Defendants.

Next, Plaintiff alleges that "[s]pecific jurisdiction was established when . . . Defendants' [sic] regularly and purposefully directed their activities at . . . [P]laintiff (resident of the forum) and requested . . . [P]laintiff use his business contacts in the forum state and tristate area." (ECF

No. 8 at 2). Specific jurisdiction describes the authority to exercise jurisdiction "when [a] claim arises from or relates to conduct purposely directed at the forum state." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008). "When a defendant challenges a court's exercise of personal jurisdiction in a 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Petrucelli v. Rusin*, 642 F. App'x 108, 109 (3d Cir. 2016) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Where, as here, "the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction[.]" *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). In determining whether Plaintiff has established a prima facie case, the Court is required to "accept the allegations in the complaint as true and to construe any disputed facts in [Plaintiff's] favor." *Fatouros v. Lambrakis*, 627 F. App'x 84, 87 (3d Cir. 2015). Still, for Plaintiff to meet his burden, he "must 'establish[] jurisdictional facts through sworn affidavits or other competent evidence.' In other words, 'bare pleadings alone' are insufficient to withstand a motion to dismiss for lack of personal jurisdiction." *Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Miller Yacht Sales, Inc.*, 384 F.3d at 101 n.6).

"Determining whether specific jurisdiction exists involves three steps: (1) the defendant must have purposefully directed his activities to the forum; (2) the plaintiff's claim must arise out of or relate to at least one of those specific activities; and (3) the assertion of jurisdiction must otherwise comport with fair play and substantial justice." *Arpaio*, 527 F. App'x at 112. Because determining whether the Court has specific jurisdiction over each Defendant requires an independent analysis, the Court addresses each Defendant below in turn.

7

### 1. Berlin

Plaintiff has established that Berlin purposefully directed its activities at New Jersey. Berlin hired Plaintiff "as its [CFO] to handle executive level financial and regulatory matters and to develop general business opportunities for interstate commerce while operating and performing duties on behalf of Defendants' [sic] 100% of the time in Defendant[s'] remote office located in Forum State." (ECF No. 8 at 6). Moreover, in the course of its dealings with Plaintiff, Berlin sent its former CEO to New Jersey "to discuss details prior to hiring Plaintiff as Berlin's" CFO. (*Id.* at 8; *see also id.* at 9 (explaining that the "former CEO of Berlin" had "[m]any discussions . . . at Plaintiff's residence in New Jersey . . . [about] the details of employment at Berlin as the [CFO]")). Further, Berlin "continued to engage in continuous business, phone, electronic funds transfer (EFT's) and email interactions with Plaintiff." (*Id.* at 7). Finally, Plaintiff avers that:

> Plaintiff used his New Jersey contacts to set up meetings and conference calls with a partner from a large national healthcare consulting firm operating from New Jersey. The meetings and discussions included [J.] Sozio and Plaintiff. Plaintiff used his extensive contacts in New Jersey and complied with requests from Defendants' [sic]. The primary intent of the meetings was to discuss opening up networking opportunities for commerce and other business relationships in the forum state and greater tristate area in general. These business arrangements seemed feasible in light of the fact that New Jersey had approved consumption of medical marijuana back in 2010 and in 2014 introduced a bill in the New Jersey Senate for passage of recreational marijuana which legislation would be modeled after Colorado law.

(*Id.*).

Defendants argue that Plaintiff has failed to establish that Berlin purposefully availed itself of the benefits of conducting business in New Jersey. First, Defendants contend that Berlin has no remote office in New Jersey. (ECF No. 9 at 2). The Court, however, is obligated to "accept all of . . . [P]laintiff's allegations as true and construe disputed facts in favor of . . . [P]laintiff[.]" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 371 (3d Cir. 2002) (citations

8

omitted). Moreover, even if Berlin did not have a remote office in New Jersey, for the reasons discussed herein, the Court nevertheless finds that Berlin purposefully availed itself of the benefits of conducting business in New Jersey.

Second, Defendants aver that "Plaintiff ignores well-settled law that out-of-state defendants' general communications with a plaintiff who happens to reside in New Jersey do not create personal jurisdiction against those defendants." (ECF No. 9 at 2). In a case cited by Defendants, however, this Court opined that *contracting* with a New Jersey plaintiff, standing alone, does not automatically confer personal jurisdiction, but rather "various forms of communications between the parties, including written correspondence and telephone calls, factor into the minimum contacts analysis." *Days Inns Worldwide, Inc. v. Miller*, No. 13-3276, 2014 WL 6485923, at *2 (D.N.J. Nov. 19, 2014) (citations omitted). Plaintiff alleges that a number of in-person discussions took place with Berlin management and/or directors in New Jersey to negotiate his employment agreement. (ECF No. 8 at 8-9). Further, Plaintiff maintains that he engaged in continuous phone calls and emails with Berlin, as well as organized meetings in New Jersey for Berlin's benefit. (*Id.* at 7). The Court finds this sufficient to establish that Berlin purposefully availed itself of the benefits of conducting business in New Jersey.

Finally, Defendants argue that "Plaintiff ignores the simple, undisputed fact that Berlin and [Trophy] cannot, as a matter of federal and Colorado law, conduct any business outside Colorado." (ECF No. 9 at 4). The question before the Court, however, is not whether Berlin can conduct business in New Jersey, but rather whether Berlin purposefully directed its activities to New Jersey. By hiring a New Jersey resident as its CFO, engaging in in-person negotiations and meetings in New Jersey, and continuously communicating with Plaintiff by phone and email, the Court finds that Berlin purposefully directed its activities to New Jersey. *See Chadwick v. St.*

*James Smokehouse, Inc.*, No. 14-2708, 2015 WL 1399121, at *5 (D.N.J. Mar. 26, 2015) ("Defendants created a 'substantial nexus' with New Jersey by placing a key piece of their business in New Jersey and engaging in continuous phone and e-mail exchanges with [Plaintiff] for the purposes of conducting that business.").

The Court also finds that Plaintiff's claims arise out of Berlin's activities, particularly Berlin's termination of Plaintiff. *See id.* at *4-5 (finding that Plaintiff's CEPA and common law wrongful discharge claims arose out of Defendants' activities, "particularly the crucial act of firing [Plaintiff]," even if Defendants were located in Florida when such termination took place).

Finally, "[e]xerting personal jurisdiction over [Berlin] also comports with 'traditional notions of fair play and substantial justice.'" *Id.* at *5. "The Supreme Court of the United States has set forth a variety of relevant factors to the 'fair play and substantial justice' inquiry including 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute' and 'plaintiff's interest in obtaining convenient and effective relief.'" *Sonic Supply, LLC v. Universal White Cement Co.*, No. 07-4529, 2008 WL 2938051, at *3 (D.N.J. July 29, 2008) (citations omitted). "The defendant bears a high burden in convincing the court that the exercise of jurisdiction would be unreasonable." *Chadwick*, 2015 WL 1399121, at *5. Berlin has not met the substantial burden of demonstrating that jurisdiction is unreasonable.

In this case, Berlin is a limited liability corporation incorporated in and with a principle place of business in Colorado. (ECF No. 1-1 at 8-9). Thus, Colorado is a more convenient forum for Berlin.[7] "However, New Jersey has a strong interest in protecting its residents from retaliatory actions. This need for protection is all the more true for New Jersey citizens working remotely for out-of-state employers." *Chadwick*, 2015 WL 1399121, at *6. Further, Berlin "received continual benefits from this forum through Plaintiff's substantial work as [CFO] for

---

[7] Nonetheless, Defendants have moved for transfer to the Middle District of Florida.

the company." *Id.* As the CFO, Plaintiff was an executive manager for the company, and he was located in New Jersey. Based on the foregoing, the Court finds that it has specific jurisdiction over Berlin. Accordingly, Defendants' motion to dismiss as to Berlin is denied.

### 2. Trophy

Plaintiff appears to argue that Berlin's actions are equally attributable to Trophy. Under a theory of piercing the corporate veil, which is not specifically raised here, but addressed to the extent Plaintiff's allegation implies it, the forum contacts of a subservient corporation may be imputed to a dominant corporation for jurisdictional purposes if the subservient corporation is deemed an alter ego of the dominant corporation. *See Pathfinder Mgmt., Inc. v. Mayne Pharma PTY*, No. 06-2204, 2008 WL 3192563, at *5 (D.N.J. Aug. 5, 2008).

> Piercing the corporate veil "depends on a finding of dominance".... Dominance is not just ownership or control over stock but rather "complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own."

*Id.* (citations omitted). In determining whether a subservient corporation is the alter ego of a dominant corporation, courts will consider:

> (1) [T]he level of capitalization of the [subservient corporation]; (2) who the [subservient corporation] does business with other than the [dominant corporation]; (3) the day-to-day involvement of the [dominant corporation's] directors, officers and personnel with the [subservient corporation]; and (4) the payment of the [subservient corporation's] salaries and expenses by the [dominant corporation].

*Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004).

Here, Plaintiff maintains that Trophy:

> [I]s the primary investor in [Berlin] and exerts significant control over its management and operation.... [Trophy] in whole or in part manages, operates [Berlin] and/or influences decisions affecting the management, finances, corporate polices and operation of [Berlin].... [Trophy] in whole or in part, makes hiring and firing decisions, negotiates employment and severance agreements, and generally handles all the finances of [Berlin].

11

(ECF No. 1-1 at 9; *see also id.* at 11-12 ("As an example of how intertwined [Berlin] and [Trophy] were/are, [Plaintiff] was formally offered employment after considerable negotiation[s] with J. Sozio, the former CEO of [Berlin], and [J. Sozio] is . . . a principle [sic] investor in [Berlin] through his employment and/or affiliation with [Trophy]."); ECF No. 8 at 4 ("Plaintiff also objected to . . . Trophy['s] . . . extraordinary control and influence over Berlin.")).

Nonetheless, Plaintiff's allegations fail to plead the necessary facts establishing a theory of piercing of the corporate veil. Plaintiff alleges no facts pertaining to Berlin's capitalization or lack of business contacts. In fact, Plaintiff's submissions indicate that Berlin was doing business with companies other than Trophy. (*See, e.g.*, ECF No. 1-1 at 12-13 (describing Berlin's alleged purchase of marijuana clones from a third party); ECF No. 8 at 3-4 (same); *id.* Exhibit E (same); *id.* Exhibit B (describing meetings Plaintiff set up with healthcare systems in New York on behalf of Berlin); *id.* Exhibit D (describing discussions with software and security companies); *id.* Exhibit G (listing "business partnership relations" as one of the CFO's responsibilities)). Although Plaintiff alleges some overlap between Berlin and Trophy's directors and officers, "[t]he mere fact that a corporation's boards of directors or officers overlap cannot establish a parent's domination or control of the subsidiary." *Pathfinder Mgmt., Inc.*, 2008 WL 3192563, at *5. Further, despite Plaintiff's aforementioned contentions, "Plaintiff has offered only minimal evidence in support of these assertions." *Gammino v. Verizon Commc'ns, Inc.*, No. 03-5579, 2005 WL 3560799, at *3 (E.D. Pa. Dec. 27, 2005). Accordingly, Plaintiff's assertions and minimal evidence are insufficient to prove that Berlin and Trophy are a single functioning entity, such that Berlin should be considered the alter ego of Trophy.

Moreover, although Plaintiff received "one to two percent stock interest in [Trophy]" as part of his compensation package, (ECF No. 1-1 at 11), Plaintiff's causes of action do not arise

out of his stock ownership in Trophy. (*Id.* at 13-14 ("[Plaintiff's] complaint about the purchase of unapproved clones, and his subsequent efforts to ensure legal and ethical business practices is the reason [h]is employment with [Berlin] was terminated.")). Accordingly, such ownership does not provide the Court with a basis for jurisdiction. *See Arpaio*, 527 F. App'x at 112. Based on the foregoing, the Court finds that it does not have specific jurisdiction over Trophy. Accordingly, Defendants' motion to dismiss as to Trophy is granted.

### 3.     Stoudenmire, J. Sozio, S. Sozio, and Van Dyke

Plaintiff has alleged a substantial number of contacts with Stoudenmire, J. Sozio, S. Sozio, and Van Dyke, some of which Defendants dispute. As discussed above, Stoudenmire is the CEO of Berlin. (ECF No. 1-1 at 9). J. Sozio is the former CEO of Berlin, (*id.* at 10), and the Chairman of the Board of Managers for Berlin. (ECF No. 8 Exhibit F). Stoudenmire, S. Sozio, and Van Dyke are all Directors of the Board of Managers for Berlin. (*Id.*).

Plaintiff claims that "the decision to terminate [Plaintiff] was made in whole or in part by . . . Stoudenmire, J. Sozio, S. Sozio, [and] Van Dyke[.]" (ECF No. 1-1 at 14; *id.* at 13 ("[D]efendants shortened the effective date of [Plaintiff's] job termination to June 4, 2015."); *see also* ECF No. 8 at 4 (explaining that J. Sozio and S. Sozio "seem[ed] to wield such singular influence on the direction of the company Berlin that they were able to have Plaintiff dismissed and Berlin to default on their contractual obligations")). Plaintiff alleges that he met with J. Sozio in New Jersey to negotiate his contract, as well as to meet with potential business partners. (ECF No. 8 at 7-9). Further, Plaintiff maintains that he engaged in continuous meetings, phone calls and emails with Stoudenmire, J. Sozio, S. Sozio, and Van Dyke throughout his employment at Berlin. (*Id.* at 3-4, 7, Exhibits B (presenting email correspondence including Plaintiff, J. Sozio, Van Dyke, S. Sozio, and Stoudenmire), C (presenting email correspondence including J.

13

Sozio and Plaintiff), D (presenting email correspondence including J. Sozio, Stoudenmire, and Plaintiff), F (presenting minutes from a Board of Managers meeting where J. Sozio, Stoudenmire, Plaintiff, Van Dyke, and S. Sozio were marked present), H (presenting a transcription of voicemails left by J. Sozio to Plaintiff regarding his employment at Berlin); ECF No. 1-1 at 12-13).

Defendants argue that "any communications by one or more Defendants . . . with Plaintiff presumably would be a part of the normal and necessary communications required for Plaintiff's engagement, which courts have routinely held do not establish jurisdiction."[8] (ECF No. 9 at 3). "'[A] person is not automatically subject to personal jurisdiction simply because they are a corporate officer [or director]' of a corporation that does business in the forum state; rather, that person's contacts with the forum state must be evaluated individually." *Bartone v. NetJets, Inc.*, No. 11-0008, 2011 WL 2532497, at *8 (D.N.J. June 24, 2011) (citations omitted). If Plaintiff's allegations are true, an evaluation of Stoudenmire, J. Sozio, S. Sozio, and Van Dyke's conduct, including their involvement with Plaintiff during his employment at Berlin, their control over his termination, and their roles as Chairman and Directors of the Board of Managers, establishes that they purposefully directed their activities at New Jersey.[9] *See Rogers v. Kasahara*, No. 06-2033, 2006 WL 6312904, at *5 (D.N.J. Oct. 16, 2006) (holding that in a CEPA case, personal

---

[8] The Court notes that Defendants further argue that Stoudenmire's alleged rental of a home in New Jersey does not give rise to specific jurisdiction over Stoudenmire. (ECF No. 9 at 2). The Court does not rely on this alleged rental in its analysis, as Plaintiff's causes of action do not arise from Stoudenmire's purported conduct in renting a home in New Jersey.

[9] The cases cited by Defendants are distinguishable. *See, e.g., Ribustello v. Wilson Sporting Goods Co.*, No. 12-2326, 2013 WL 140096, at *3 (D.N.J. Jan. 10, 2013) (declining to extend jurisdiction where "Plaintiff's only allegation as to [one individual Defendant wa]s that [he] failed to respond to one email that Plaintiff sent from New Jersey . . . . [and where] Plaintiff's only allegation as to [another individual Defendant wa]s that [he] made one telephone call from Illinois to New Jersey to inform Plaintiff of his termination"); *Bartone v. NetJets, Inc.*, No. 11-0008, 2011 WL 2532497, at *8 (D.N.J. June 24, 2011) (declining to extend jurisdiction where claims did not arise out of any conduct directed at New Jersey).

jurisdiction over Defendants was proper where Defendants "made or approved the decision to terminate" Plaintiff and "controlled [Plaintiff's] employment" at the corporation he worked for).

Moreover, Plaintiff's claims arose out of Stoudenmire, J. Sozio, S. Sozio, and Van Dyke's contacts with the state of New Jersey, specifically the termination of Plaintiff's employment. *See Chadwick*, 2015 WL 1399121, at *5. Finally, for the same reasons as set forth above with respect to Berlin, the Court finds that exerting personal jurisdiction over Stoudenmire, J. Sozio, S. Sozio, and Van Dyke also comports with traditional notions of fair play and substantial justice. *See supra* Section III.A.1. Based on the foregoing, the Court finds that it has specific jurisdiction over Stoudenmire, J. Sozio, S. Sozio, and Van Dyke. Accordingly, Defendants' motion to dismiss as to Stoudenmire, J. Sozio, S. Sozio, and Van Dyke is denied.

## B. Transfer Pursuant to 28 U.S.C. § 1404(a)

Defendants request that "[s]hould the Court decline to dismiss this case, it should transfer it to the Middle District of Florida[.]" (ECF No. 4 at 14). Defendants contend that the Unit Purchase Agreement, whereby Trophy repurchased Plaintiff's one to two percent stock interest in Trophy after Plaintiff's termination, contains a valid forum-selection clause that governs the instant matter. (*Id.* at 14-22).

A party may move to transfer a civil action pursuant to 28 U.S.C. § 1404, which provides in relevant part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Generally, '[t]he burden of establishing the need for transfer . . . rests with the movant,' and 'in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed.'" *Steinmetz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 220 F. Supp. 3d 596,

600 (E.D. Pa. 2016) (citations omitted); *see also Van Dyke v. Schultz*, No. 14-3296, 2015 WL 225816, at *2 (D.N.J. Jan. 15, 2015).

"A court ordinarily evaluates a § 1404(a) motion by considering factors such as the convenience of the parties and the relevant public interests." *Steinmetz*, 220 F. Supp. 3d at 600. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 581 (2013) (citations omitted). "Because forum selection clauses are 'bargained for by the parties,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Steinmetz*, 220 F. Supp. 3d at 601 (citations omitted).

Here, the forum-selection clause in the Unit Purchase Agreement states:

> This Agreement and any disputes or controversies arising hereunder shall be governed by and construed in accordance with the domestic laws of the State of Florida without giving effect to any choice or conflict of law provision or rule (whether of the State of Florida or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Florida. THE PARTIES CONSENT TO THE JURISDICTION AND VENUE OF THE FEDERAL AND STATE COURTS IN THE STATE OF FLORIDA FOR THE PURPOSE OF RESOLVING ALL ISSUES OF LAW, EQUITY, OR FACT ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT. EXCEPT AS PROVIDED BELOW, ANY ACTION INVOLVING CLAIMS OF A BREACH OF THIS AGREEMENT MUST BE BROUGHT EXCLUSIVELY IN SUCH COURTS. EACH PARTY CONSENTS TO PERSONAL JURISDICTION OVER SUCH PARTY IN SUCH COURTS, AND HEREBY WAIVES ANY DEFENSE OF LACK OF PERSONAL JURISDICTION. ANY PARTY SEEKING EQUITABLE RELIEF MAY BRING SUCH ACTION IN STATE COURTS OF FLORIDA.

(ECF No. 8 Exhibit A). Plaintiff maintains that the "Unit Purchase Agreement is specifically related to [the] repurchase of stock [that Trophy] made from Plaintiff and has no relationship to [his claims]." (*Id.* at 9).

The issue before the Court, therefore, is whether the Unit Purchase Agreement's

provision that "any action involving claims of a breach of this agreement must be brought exclusively in such courts" encompasses Plaintiff's causes of action. The Court finds that it does not. In the complaint, Plaintiff asserts two counts: one violation of CEPA and one "Common Law Public Policy Claim." (ECF No. 1-1). Plaintiff does not bring a cause of action for a breach of the Unit Purchase Agreement and therefore, Defendants arguments are without merit.

Nonetheless, Defendants further argue that the Unit Purchase Agreement's provision that "the parties consent to the jurisdiction and venue of the federal and state courts in the state of Florida for the purpose of resolving all issues of law, equity, or fact arising out of, relating to, or in connection with this agreement," (ECF No. 8 Exhibit A), necessitates transfer of this matter. (ECF No. 9 at 5-6). This provision, however, does not *require* Plaintiff to bring such causes of action in Florida. *See Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, No. 07-273, 2007 WL 4365328, at *1 (D.N.J. Dec. 11, 2007) (identifying a similar forum-selection clause as permissive).

Even if such provision was mandatory, however, the Court does not find that Plaintiff's causes of action arise out of, relate to, or are in connection with the Unit Purchase Agreement. Defendants aver that "Plaintiff's retaliation claims clearly relate to the [Unit Purchase] Agreement, since the Agreement provides Defendants a direct defense to Plaintiff's prayer for economic damages." (ECF No. 9 at 5-6; *see also id.* at 5 ("Plaintiff and [Trophy] subsequently entered into the [Unit Purchase] Agreement which finalized the separation between the parties and provided for a buy-out of Plaintiff's investment in [Trophy].")). Nothing in the Unit Purchase Agreement, however, makes any reference to Plaintiff's employment at or termination from Berlin. Although the Agreement contains a release, such release extends only to "matters arising out of th[e Unit Purchase] Agreement or relating to the adequacy of the Purchase Price,"

17

which Plaintiff does not allege. (ECF No. 8 Exhibit A). The Agreement relates only to Trophy, and makes no mention of Berlin, Stoudenmire, J. Sozio, S. Sozio, or Van Dyke.[10] The one case cited by Defendants in support of their argument is distinguishable, as the Court held that a forum-selection clause in one agreement that "was created to deal with potential claims . . . because of the transfer of the Property through" another agreement, applied in both contexts. *See Bergen Del. Realty, LLC v. The Ryland Grp., Inc.*, No. 15-2888, 2015 WL 9480019, at *4 (D.N.J. Dec. 29, 2015). Here, there is no indication that the Unit Purchase Agreement was created to deal with potential claims arising out of, relating to, or in connection with Plaintiff's employment or termination. Plaintiff's causes of action seek to enforce rights under CEPA and New Jersey common law. That Defendants may use the Unit Purchase Agreement as a defense to Plaintiff's purported economic damages does not render the forum-selection clause applicable to Plaintiff's claims. *See Krist v. Scholastic, Inc.*, 253 F. Supp. 3d 804, 809 (E.D. Pa. 2017) ("This argument conflates the issue of whether the [agreements] provide a defense to Plaintiff's copyright claim with the issue of whether the [agreements] give rise to Plaintiff's claim in the first instance, which they plainly do not.").

Defendants also seem to imply that even absent the aforementioned forum-selection clauses, this matter should be transferred to the Middle District of Florida. "The burden of establishing the need for transfer . . . rests with the movant[.]" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

> In evaluating motions to transfer, courts consider a multitude of public and private interests. Among the relevant private interests are the parties' forum preferences, where the claim arose, the convenience of the parties, the convenience of witnesses, and the location of relevant documents. The relevant public interests include the enforceability of the judgment, various practical considerations, and court congestion in the relevant fora.

---

[10] Although Van Dyke is Trophy's signatory to the Unit Purchase Agreement.

*Krist*, 253 F. Supp. 3d at 811; *see also Van Dyke*, 2015 WL 225816, at *2.

Upon consideration of these factors, the Court finds that Defendants have not met their burden. Plaintiff, appearing *pro se*, prefers New Jersey and Defendants prefer Florida. "[Plaintiff's] choice of his home state as a forum is entitled to deference, [and] he has sued a corporate defendant [and its directors] that [likely] ha[ve] the wherewithal to defend [themselves] in this Court[.]" *Krist*, 253 F. Supp. 3d at 811. As discussed above, Defendants' termination of Plaintiff was directed at New Jersey, rendering New Jersey the forum in which Plaintiff's claims arose. Given that Defendants are represented by counsel, Plaintiff appears *pro se*, and Defendants are domiciled in many states, the convenience of the parties does not point to Florida, but rather to New Jersey. It does not appear that Defendants have argued that their documents and witnesses would be unavailable for trial in New Jersey.

With respect to enforceability of the judgment, this factor weighs in favor of transfer, but only slightly as only two of the remaining Defendants are domiciled in Florida. There is no indication that practical considerations favor Florida. In fact, in light of Plaintiff's *pro se* status, practical considerations weigh against transfer. The District of New Jersey also has a strong interest in deciding local controversies at home, as where one of its citizens alleges wrongful termination. Accordingly, the Court finds that transfer under Section 1404(a) is inappropriate and therefore denies Defendants' motion to transfer.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion is granted in part and denied in part. An appropriate Order accompanies this Opinion.

DATED: June 14, 2018

CLAIRE C. CECCHI, U.S.D.J.